IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LORRI COCHRANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 05-6295-CO |
| v. | ) | |
| | ) | FINDINGS AND |
| JO ANNE B. BARNHART, Commissioner of | ) | RECOMMENDATION |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

KATHRYN TASSINARI
DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR 97401

        Attorneys for Plaintiff

KARIN IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR   97204

1 - FINDINGS AND RECOMMENDATION

TERRY E. SHEA
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104

      Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Lorri Cochrane brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision should be affirmed.

## BACKGROUND

Cochrane was born July 25, 1959. During the period that is relevant for this appeal, she was 38 to 40 years of age. She has the equivalent of a high school education and relevant work experience as a house cleaner. Cochrane alleges that she became unable to work on December 31, 1997, due to fibromyalgia, depression, problems with her neck, back and knees, acid reflux disease, tendinitis and tennis elbow. Tr. 191.[1]

The Commissioner denied Cochrane's application and this court affirmed that decision. The Court of Appeals reversed and remanded because the ALJ did not articulate specific and legitimate reasons for rejecting the medical opinion of James Morris, M.D. Tr. 540. On remand, the

_____

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 9).

Commissioner denied Cochrane's application in a decision dated June 4, 2005. Tr. 443-63. The appeal of that decision is now before this court.

Meanwhile during the pendency of her initial application, Cochrane filed new DIB and SSI claims alleging disability commencing February 18, 2000. The new claims were denied in a decision dated October 24, 2002, which is included in the record for this case, but is not challenged in this appeal. Tr. 476-98. As a result, the relevant time for this appeal is the 26-month period from the alleged onset date asserted in Cochrane's initial application, December 31, 1997, to the day before the alleged onset date asserted in her subsequent application, February 17, 2000.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R §§ 404.1520, 416.920. Cochrane challenges the fifth step of the ALJ's decision.

For the purposes of step five, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.

3 - FINDINGS AND RECOMMENDATION

The ALJ must then determine whether the claimant retains the RFC to perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

The ALJ found that Cochrane's ability to work during the relevant period was limited by the combined effects of fibromyalgia, recurrent moderate major depression and alcohol and cocaine dependence in long-term remission. Tr. 449. He determined that Cochrane retained the following RFC during the relevant period:

> The claimant retained a light exertional residual functional capacity. Mental impairments limited the claimant to simple routine tasks that are self-paced. She should not perform co-operatively with other workers, nor work primarily with the general public. She should have routine work requiring minimal supervision.

Tr. 460.

The ALJ elicited testimony from the vocational expert (VE) with a hypothetical question based on the foregoing RFC assessment and vocational factors reflecting Cochrane's age, education and work experience. The VE testified that jobs existed in significant numbers in the economy that such an individual could perform, including motel cleaner, bench assembler, computer control photo printer operator and sedentary assembler.

Accordingly, the ALJ concluded that Cochrane had failed to establish that she was disabled within the meaning of the Social Security Act during the relevant period.

4 - FINDINGS AND RECOMMENDATION

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Cochrane contends the ALJ failed to assess her RFC accurately because he improperly rejected her testimony, the opinions of three of her physicians and the testimony of a lay witness. She asserts that the ALJ elicited vocational testimony with a hypothetical question that did not accurately reflect all of her limitations and that the VE's testimony was insufficient to satisfy the Commissioner's burden of proving that jobs exist which she is able to perform.

### I.     RFC Assessment

The Court of Appeals instructed the Commissioner to hold proceedings after remand to consider the opinion of Dr. Morris. The Court of Appeals declined to affirm the Commissioner's

evaluation of Cochrane's testimony, the statements of John LeBow, D.O. and Joan Jensen, M.D., and the testimony of lay witness Brenda Peters because the ALJ might not have taken Dr. Morris's opinion into account in those evaluations.

A.    **Dr. Morris's Opinion**

Dr. Morris is a specialist in chronic pain and rehabilitation.  Cochrane's primary care physician at the time, Kimberly Herder, M.D., referred Cochrane to Dr. Morris for an evaluation of her complaints of diffuse body pain.  Dr. Morris saw Cochrane on June 10, 1998.  He based his evaluation on an interview and physical examination of Cochrane and a review of Dr. Herder's records and those of Sharell Tracy, D.C.

Dr. Morris obtained benign findings on his physical examination.  Cochrane's head, eyes, ears, nose, throat, lungs, heart and abdomen were unremarkable.  She demonstrated full range of motion in her shoulders, upper extremities, back and lower extremities.  Her straight-leg-raise examination was negative.  She had normal sensation and reflexes.  Her neurological examination was normal.  Cochrane's mood was euthymic and her affect was energetic.

Dr. Morris diagnosed fibromyalgia syndrome based on reproducible tenderness at the classic fibromyalgia trigger points with negative control points.  Dr. Morris opined as follows:

> I do not think she is employable at the present time, and by her history, she has been disabled since her last day of work.  I do think that multidisciplinary treatment would render her employable, at least part time, in limited duty capacities some time in the future.  The crux is coordinated treatment, combining medication, adjustments, physical therapy, appropriate exercise with conditioning, and vocational counseling.  Her present condition will last at least 12 months without such complete treatment and rehabilitation.

Tr. 313.

6 - FINDINGS AND RECOMMENDATION

The ALJ accepted Dr. Morris's objective medical findings and diagnosis of fibromyalgia syndrome.  He rejected Dr. Morris's opinion only to the extent it suggested that Cochrane was not employable.

Dr. Morris's opinion that Cochrane was not employable was inconsistent with the contemporaneous statements of the medical sources whose records he reviewed.  Dr. Herder's records showed that in March 1998, Cochrane demanded a disability letter from her based on neck and back pain.  Dr. Herder performed a physical and neurological examination and obtained entirely normal findings.  Cochrane had no muscle spasms, tenderness or diminished range of motion, strength or muscle tone.  Dr. Herder opined that none of the information available to her would be helpful in Cochrane's claim of disability.  Tr. 298-99.

Dr. Tacy's records included her opinion that Cochrane was not permanently or totally disabled.  Dr. Tracy suggested that Cochrane needed financial aid and work hardening after which she "would be able to sit, stand, travel, lift moderately [and] perform normal social skills, albeit with a certain amount of pain."  Tr. 262.

An ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ noted that Dr. Morris examined Cochrane only once and reviewed only medical records that were contrary to his disability conclusion.  As described previously, Dr. Morris's objective findings were benign, except for the fibromyalgia trigger points.  Dr. Morris did not

perform any objective testing of Cochrane's physical capacities or ability to perform work-related functions.

The remainder of the Dr. Morris's information came directly from Cochrane's subjective report. As discussed in the following section of these Findings, the ALJ concluded that Cochrane's subjective reports were not reliable. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaints which the ALJ has properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ also pointed out that the issue of whether Cochrane was employable is beyond Dr. Morris's medical expertise. Dr. Morris's statement "I don't know if you can work or not, but I do know that you probably can't do the kind of work as a housecleaner that you used to do" suggests that he defined employability by reference to Cochrane's past work instead of applying the statutory definition of disability. Tr. 314. The ALJ also found Cochrane incapable of doing her past work. She remained employable under the statutory definition of disability, however, because she remained capable of other occupations.

Similarly, the record does not suggest that Dr. Morris has vocational training or any other basis for knowing the requirements of work in the universe of occupations. The ALJ could reasonably conclude that Dr. Morris's medical education and experience did not provide the requisite vocational background for determining that Cochrane could not be employed in any work. The ALJ could reasonably find Dr. Morris's opinion on that subject unpersuasive.

The ALJ pointed out that the question of whether a claimant is employable is not a medical opinion about specific functional limitations, but an administrative finding that the regulations

reserve to the Commissioner.  Opinions on issues reserved to the Commissioner cannot be given controlling weight or special significance, even when offered by a treating physician.  20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p.

Even if accepted as true, Dr. Morris's opinion only described Cochrane's then-current condition, which Dr. Morris did not consider medically stationary.  He felt that Cochrane would receive considerable benefit from medications, nutritional supplements and alternative pain control techniques.  He gave Cochrane specific recommendations and referrals to specialists in physical therapy, psychology, vocational rehabilitation and support group counseling.  Dr. Morris believed Cochrane would be able to return to the work force if she followed these treatment recommendations, commenting that "fibromyalgia symptoms are eminently treatable if not curable, and this will frequently lead to a functional state." Tr. 313.  Cochrane did not pursue Dr. Morris's recommendations.

Thus, the ALJ provided legally adequate reasons for rejecting Dr. Morris's statement that he did not think Cochrane was employable.  The ALJ's RFC assessment accounted for the inferences that could reasonably be drawn from Dr. Morris's opinion and the record as a whole.

### B.    Cochrane's Testimony

At the hearing in August 1999, Cochrane testified that she could walk for about one half city block before experiencing stiffness and inflammation and feeling winded.  She could stand for about 15 minutes before she needed to sit or lie down.  She could not lift more than a gallon of milk.  She said she was intolerant, aggressive and emotionally unstable due to lifelong depression.

At the hearing in December 1999, Cochrane testified that she typically spent most of the day in bed or lying on the couch.  She claimed she slept for 12 hours a night and took 2 two-hour naps

during the day.  During a typical daytime period of 8 hours, she napped for 4 hours and sat or lay on the couch for 2 hours.

At the most recent hearing, in April 2005, Cochrane did not testify about her condition during the relevant period.

The ALJ accepted that during the relevant period, Cochrane was not able to exceed the regulatory limits of light work.  He did not accept her claims that she could not lift more than a gallon of milk or walk more than one-half block or that she required excessive sleep during the day. He accepted that she had mental impairments limiting her to simple, routine tasks that are self-paced and require minimal supervision, no cooperative work with others nor work primarily with the public.  He rejected her suggestion that her impairments left her so intolerant, aggressive and emotionally unstable that she was unable to work.

An ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996).  The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When making a credibility evaluation, an ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment.  *Smolen*, 80 F3d at 1284.  The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations.  *Id.*  In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ considered proper factors and his findings are supported by substantial evidence. The ALJ pointed out that Cochrane's asserted limitations were disproportionate to the objective medical findings. The court acknowledges that fibromyalgia syndrome is a condition that is difficult to measure objectively. Reasonable inferences can be drawn from the medical record, however. Here, the ALJ noted that Cochrane's assertions were inconsistent with repeated physical examinations showing completely normal muscle strength, bulk and tone. The ALJ could reasonably conclude that if Cochrane's impairments prevented her from lifting more than a gallon of milk and confined her to bed 16 hours a day, objective medical findings would reveal signs of muscle atrophy.

The ALJ cited the Physical Capacities Evaluation performed by Susan Bottomley, O.T.R., on September 9, 1999. The examination included range of motion measurements, manual muscle testing, materials handling and targeted physical capacities. Cochrane failed to meet validity criteria in range of motion measurements for the cervical and lumbar spine. She claimed that cervical flexion brought on hand numbness inconsistent with her pain diagram and with her report that she had no hand discomfort and normal fine motor control. Cochrane's numbness was also inconsistent with prior reports in which "she denied having any radiating pain, numbness, weakness or paresthesia." Tr. 366.

Cochrane responded in an abnormal manner to Waddell's signs for nonorganic pain behavior for superficial tenderness. She responded to a fibromyalgia trigger point examination in a manner inconsistent with the classic tender points and included one of the control points. Cochrane's grip strength measurements were markedly inconsistent with full voluntary effort. Even without valid

effort, Cochrane demonstrated the ability to lift and carry up to 15 pounds.  In a test of walking

capacity, Cochrane had to turn around after one minute which was inconsistent with her subjective

reports of activities including regular walking and shopping.

Ms. Bottomley concluded that Cochrane had not given valid effort and opined as follows:

> It is our opinion that Ms. Cochrane is capable of work on a physical
> basis.  It is our understanding that individuals with fibromyalgia who
> actively participate in a targeted exercise program are capable of
> work, and on a physical basis, in the presence of a normal
> neuromuscular examination, we have no reason to restrict normal
> work activities for a woman of [Cochrane's] age and stature, which
> would be light-medium work.

Tr. 386.

Cochrane underwent a consultative psycho-diagnostic evaluation by Barbara Ann Perry,

Ph.D., on June 2, 1998.  Dr. Perry diagnosed major depression of a moderate severity, and concluded

that she did not appear to be experiencing post traumatic stress disorder.  Cochrane's responses on

a trauma symptom inventory suggested that she did not experience symptoms of post traumatic stress

disorder or anxiety from past trauma.  Tr. 267-68.  Despite Dr. Perry's findings, on June 16, 1998,

Cochrane sought "counseling for continued symptoms of PTSD and depression" based on her

reported history of "PTSD related to severe physical abuse she suffered in her family of origin."  Tr.

349, 352.

The ALJ reasonably found Cochrane's claim of ongoing PTSD symptoms inconsistent with

Dr. Perry's contemporaneous evaluation.  Based on the foregoing examples and the medical and

psychological reports throughout the record, the ALJ could reasonably conclude that Cochrane's

subjective presentations to her many health care providers were not reliable.  Her demonstrated lack

of reliability provided a legitimate basis for discounting her testimony.

12 - FINDINGS AND RECOMMENDATION

The ALJ pointed out that Cochrane's treatment history reflected that she changed physicians frequently during the relevant period, often after a physician declined to support her claim of disability. For example, in October 1998, Cochrane began treating with Nicholas Gideonze, M.D., for fibromyalgia. Dr. Gideonze noted that "Her main position was wondering whether I would be supportive of her disability claim." Tr. 303. He was not sure whether this reflected self advocacy or secondary gain. Based on Cochrane's treatment history and the record as a whole, the ALJ concluded that Cochrane engaged in doctor shopping for secondary gain. Tr. 456. This interpretation of the evidence is reasonable and should not be overturned.

The ALJ also relied on reports of Cochrane's activities. Cochrane engaged in shopping, walking and typical household chores such as laundry, vacuuming and working in the yard. While these activities are not equivalent to sustained full time light work, they are inconsistent with Cochrane's assertion that she is essentially bedridden. In addition, the ALJ pointed out that while Cochrane claimed to be unable to engage in sedentary work, she was able to travel all day on a train to Seattle, Washington, fly to Pennsylvania and ride in a car from Pennsylvania back to Oregon. The ALJ concluded that such travel would require Cochrane to perform activities inconsistent with her asserted incapacity to do even sedentary work.

In addition, Cochrane admitted in her testimony that she had not followed recommended therapies. The ALJ could reasonably conclude that a person experiencing debilitating symptoms would pursue recommended treatments with greater urgency.

The foregoing and additional reasons stated in the ALJ's decision show that the ALJ had an adequate basis for discounting Cochrane's statements. He did not err by concluding that her statements were credible only to the extent supported by objective evidence. His findings are

sufficiently specific to permit this court to conclude that he did not discredit her testimony arbitrarily. *Orteza v. Shalala*, 50 F.3d at 750.

### C.    Medical Source Statements of Drs. LeBow and Jensen

Cochrane had her initial visit with Dr. LeBow on March 29, 1999, for a new onset of low back pain. Cochrane reported that she had been "disabled from working for about two years" because of fibromyalgia. Tr. 361. Physical examination revealed noticeable tenderness to palpation, but no radiculopathy. X-ray images were unremarkable except for some facet joint osteoarthritis in the lumbar spine which correlated with Cochrane's low back pain. Within two weeks, Cochrane felt better and moved more freely. She had mild diffuse tenderness to palpation, but no neurological deficits or radicular symptoms. For her underlying complaints of fibromyalgia and depression, Dr. LeBow recommended pool therapy and sleep medications.

Dr. LeBow performed a complete physical examination on April 20, 1999, which was significant only for low back pain and low grade abdominal tenderness. On May 21, 1999, Cochrane visited Dr. LeBow after returning from a trip to Pennsylvania. She complained of increased daytime sleepiness, forgetfulness and lack of concentration over the preceding two to three weeks. Dr. LeBow discovered that Cochrane had been receiving medications from a psychiatric nurse without his knowledge. He was "highly suspicious that this was the etiology of a number of her complaints." Tr. 380. Cochrane had a long discussion with Dr. LeBow regarding her "documentation needs" with respect to her claim for social security disability benefits. *Id.*

In August 1999, Dr. LeBow completed a worksheet created by Cochrane's attorney. He marked boxes indicating that Cochrane: was not capable of sustained work at any exertional level, including sedentary; had marked impairment in the ability to maintain attention and concentration for

extended periods, complete a normal work schedule without interruptions from medically based symptoms and perform at a consistent pace; had moderate limitation in the ability to perform activities within a schedule and maintain attendance within customary tolerance; could stand for 45 minutes at a time for a total of 3 hours in a day; and, had limitations in fine and gross manipulation. Tr. 370-73. Dr. LeBow responded in the affirmative when Cochrane's attorney asked whether her "combined impairments and resulting symptoms would reasonably prevent her from regular attendance at any job and cause her to miss work for three or more days a month." Tr. 374.

The ALJ rejected Dr. LeBow's worksheet because it was unsupported by clinical findings, relied primarily on Cochrane's subjective presentations and was contrary to the record as a whole.

These reasons are supported by substantial evidence. Dr. LeBow's chart notes do not include clinical findings regarding the limitations indicated on his worksheet. Indeed, when asked to identify the medical evidence supporting his opinion, Dr. LeBow conceded that they were based on Cochrane's "multiple complaints of muscle pain secondary to fibromyalgia, periodic migraine headaches and what is probably chronic depression with the typical associated symptoms." Tr. 374. Nothing in this statement or his progress notes provides a clinical basis for his conclusions.

An ALJ can reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). An ALJ is also entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Fair v. Bowen*, 885 F.2d at 605; *Tonapetyan v. Halter*, 242 F.3d at 1149.

The ALJ also believed Cochrane's activities and travel were inconsistent with Dr. LeBow's opinion that she is unable to sustain even sedentary work. This interpretation of the evidence of Cochrane's activities is reasonable in the context of the record as a whole. The ALJ also noted that

Dr. LeBow later admitted to Cochrane that he was "not entirely sure that [her symptoms] actually made her totally disabled." Tr. 913.

Under the circumstances, the ALJ could reasonably conclude that clinical findings elsewhere in the record, including those of Ms. Bottomley and Dr. Perry, and the testimony of the medical expert provided a more accurate picture of Cochrane's limitations than Dr. LeBow's worksheet. The ALJ's reasons are clear and convincing and supported by substantial evidence in the record. His rejection of Dr. LeBow's disability opinion should not be disturbed. *Thomas*, 278 F3d at 956-57.

Dr. Jensen evaluated Cochrane in November 1999 for "memory disturbance, cognitive decline associated with a minor CT abnormaity." Tr. 416. Cochrane had undergone a cranial CT scan that showed "very mild frontal atrophy." Tr. 418. Dr. Jensen could not determine the etiology of the mild atrophy, but felt it might reflect Cochrane's history of substance abuse, depression, chronic pain syndrome, medications, sleep disorder or a combination of these factors.

Dr. Jensen did not identify specific functional limitations. She described Cochrane as alert, pleasant, cooperative and an excellent historian. Cochrane's mental status was "completely intact." On physical examination, Cochrane had normal muscle bulk and tone and normal station, gait, sensation and reflexes. She demonstrated "give way weakness" in all the muscle groups Dr. Jensen tested. Tr. 418. Despite these benign findings, Dr. Jenseon noted:

> I do feel that this patient is probably disabled from her condition, but
> this would be something that she will need to discuss further with her
> primary care physician.

Tr. 419.

The ALJ articulated legally sufficient reasons for discounting the quoted statement. He found that Dr. Jensen "unquestioningly relied" on Cochrane's subjective reports in making the statement

and referred to the reasons already given for discrediting Cochrane's subjective reports. Tr. 458. Dr. Jensen's reliance on Cochrane's history is supported by substantial evidence.

Dr. Jensen's own findings did not support problems with memory or cognition. Cochrane gave a detailed history of her remote and recent past and Dr. Jensen commended her as an excellent historian. Her mental status was fully intact. Dr. Jensen's physical examination did not support limitations, finding only give way weakness typically associated with lack of full effort.

The ALJ pointed out that Dr. Jensen's disability comment was not supported by the previous psychological evaluation in which Dr. Perry found only moderate depression and very little in the way of functional limitation. It was not consistent with the findings of David Truhn, Psy.D., who evaluated Cochrane in February 1999. Dr. Truhn obtained IQ scores in the low average range and felt memory was a relative strength for Cochrane. He obtained an MMPI-2 profile typical for individuals who experience "somatic complaints and there often appears to be a clear secondary gain associated with the symptoms." Tr. 331. There is no evidence that Dr. Jensen was given access to any other medical records.

Because Dr. Jensen's disability comment was not supported by her own findings or by the findings from earlier psychological evaluations, the ALJ could reasonably conclude that the comment was based primarily on Cochrane's subjective reports. As noted previously, an ALJ can reject a physician's opinion that is conclusory and unsupported by clinical findings or premised primarily on subjective complaints that the ALJ properly finds unreliable. *Meanal v. Apfel*, 172 F.3d at 1117; *Fair v. Bowen*, 885 F.2d at 605; *Tonapetyan v. Halter*, 242 F.3d at 1149.

Accordingly, the ALJ articulated legally sufficient reasons for rejecting the disability opinions of Drs. LeBow and Jensen. His reasoning is supported by substantial evidence in the record as a whole and his conclusions should be upheld.

### D.    Lay Witness Testimony

Cochrane's friend Brenda Peters testified that Cochrane used to be outgoing and active, but stopped taking care of herself physically in the relevant period. Cochrane stopped going on walks, trips to Seattle and shopping with Peters as they had done in the past. Ms. Peters felt Cochrane's memory had diminished because she often repeated herself. She would get upset and act inappropriately in some interactions, such as when a waiter got her order wrong. She is a poor driver because she does not pay enough attention. She has talked about suicide. Tr. 152-58.

Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F.3d at 918. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

The ALJ did not disregard or discount Ms. Peters' testimony. His RFC assessment reflects the reasonable conclusions that can be drawn from her general statements about Cochrane's difficulty interacting with others. He limited Cochrane's occupational base to jobs that do not require cooperation with coworkers or working directly with the public or greater than minimal supervision.

Ms. Peters' testimony did not identify specific functional limitations and the ALJ could reasonably conclude that her observations did not establish that Cochrane was limited in any way. The ALJ considered Ms. Peters' testimony and found that it did not support severe or disabling

mental impairments.   This does not amount to an improper rejection of lay witness testimony. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999).  The ALJ's evaluation of Ms. Peters' testimony is a reasonable interpretation and is consistent with the record as a whole.  It should not be disturbed.

## II.   <u>Vocational Testimony</u>

Cochrane's final contention is that the vocational evidence was insufficient to support the ALJ's decision because it was elicited with a hypothetical question which did not reflect that she could not sustain full time work, as suggested by Drs. Morris, Jensen and LeBow, that she has a bad temper, as suggested by Ms. Peters' testimony, and that she had limitations in gross and fine manipulation, as indicated in Dr. LeBow's opinion.

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy.  *Andrews v. Shalala*, 53 F.3d at 1043.  The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant.  *Id.*  The assumptions in the hypothetical question must be supported by substantial evidence.  *Id.*

Cochrane's final contention cannot be sustained because the ALJ properly evaluated and rejected the only evidence Cochrane presented to show that she has these additional limitations.  As discussed previously, the ALJ properly evaluated the medical statements of Drs. Morris, Jensen and LeBow and the testimony of Ms. Peters.  His RFC assessment reflects reasonable conclusions drawn from that evidence and includes all the functional limitations the ALJ found supported by the record as a whole.  Accordingly, the ALJ's exclusion of the additional limitations asserted by Cochrane is supported by substantial evidence.

## <u>RECOMMENDATION</u>

Based on the foregoing, the Commissioner's determination that Cochrane does not suffer from a disability and is not entitled to an award under Title II or Title XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be AFFIRMED and the case should be DISMISSED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _31___ day of October, 2006.

_____/s/_____
John P. Cooney
United States Magistrate Judge